# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-2095

SHYKIRA SCOTT, individually and on behalf of all others similarly situated,

      Plaintiff,

  v.

REVENTICS, LLC,

      Defendant.

---

## CLASS ACTION COMPLAINT

---

Plaintiff Shykira Scott ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Reventics, LLC ("Reventics" or "Defendant"). Upon personal knowledge, investigation of counsel, and upon information and belief, Plaintiff states and alleges as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff brings this class action suit against Defendant due to its failure to adequately protect the confidential and sensitive personally identifying information ("PII") and protected health information ("PHI") belonging to Plaintiff and other similarly situated individuals whose medical care providers used Defendant's products and services and whose PII and PHI was improperly accessed in a cyber-attack (collectively, "Class Members" or the "Class").

2.    This PII and PHI includes, but is not limited to, first, middle, and last name, date of birth, Social Security number, medical record number, date(s) of service, and health insurance policy number.

3.     Medical and financial records represent the most sensitive information available concerning a person's private affairs. These records reveal intimate and personal aspects of the human condition, such as illnesses that might carry social stigma and details about substance abuse, family planning and mental health. Congress has passed legislation under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") in order to protect this highly confidential data, because in the wrong hands, bad actors may target and exploit the most sensitive and vulnerable populations among the public.

4.     Reventics had an obligation to safeguard this information. On or about December 15, 2022, Reventics detected a cyber-intruder who had encrypted and potentially accessed information on Reventics' servers (the "Data Breach"). On December 27, 2022, Reventics confirmed that certain information related to several of its customers was impacted. Reventics did not notify health care providers of the Data Breach until June 26, 2023. Reventics then did not notify Plaintiff of the Data Breach until August 1, 2023.

5.     Reventics knew or should have known of the increasing number of well-publicized data breaches that have occurred in the United States. And yet, Reventics failed to adequately secure and upgrade its systems, and failed to provide notice to affected individuals within a reasonable amount of time.

6.     Plaintiff and Class Members, by way of their medical service providers, entrusted Reventics with their sensitive and valuable PII and PHI. Plaintiff and Class Members did not know that Reventics' data security was inadequate.

7.     Reventics has caused harm to Plaintiff and Class Members by collecting, using, and maintaining their PII and PHI for its own economic benefit but utterly failing to protect that

information: Reventics did not maintain adequate security systems, did not properly archive PII and PHI, allowed access by third parties, and did not implement sufficient security measures.

8.    Plaintiff brings this action on behalf of all persons in the United States whose PII and PHI was compromised as a result of Reventics' failure to:

a.  Adequately protect its customers' PII and PHI;

b.  Warn customers of its inadequate information security practices; and

c.  Effectively secure hardware, data, and information systems through reasonable and effective security procedures.

9.    Reventics' conduct constitutes negligence that proximately caused damages to Plaintiff and Class Members.

10.    The Data Breach was the result of a sophisticated, intentional, and malicious attack by professional cybercriminal hackers and was not the result of an accidental disclosure by a Reventics employee. Thus, there is an increased and substantial risk that the victims will experience identity theft or fraud that is sufficiently imminent.

11.    Plaintiff and Class Members have suffered injury as a direct and proximate result of Reventics' conduct.

12.    These above-mentioned injuries to Plaintiff and the Class Members include:

a.  Lost or diminished value of PII and PHI, a form of property that Reventics obtained from Plaintiff and Class Members;

b.  Out-of-pocket expenses associated with preventing, detecting, and remediating identity theft and other unauthorized uses of their PII and PHI;

c.  Opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time;

d.  The continued and certain increased risk that unauthorized persons will access and abuse Plaintiff's and Class Members' unencrypted PII and PHI that is available on the dark web;

e.  The continued and certain increased risk that the PII and PHI that remains in Reventics' possession is subject to further unauthorized disclosure for so long as Reventics fails to undertake appropriate and adequate measures to protect the PII and PHI;

f.  Invasion of privacy; and

g.  Theft of their PII and PHI and the resulting loss of privacy rights in that information.

13.    As a direct and proximate result of Reventics' breach of confidence and failure to protect the PII and PHI, Plaintiff and Class Members have been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuses of their PII and PHI; ongoing monetary loss and economic harm; loss of value of privacy and confidentiality of the stolen PII and PHI; illegal sales of the compromised PII and PHI; mitigation expenses and time spent on credit monitoring; identity theft insurance costs; credit freezes/unfreezes; expense and time spent on initiating fraud alerts and contacting third parties; decreased credit scores; lost work time; and other injuries. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

**JURISDICTION AND VENUE**

14.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states.

15.    This Court has personal jurisdiction over Defendant because Defendant's negligent acts or omissions, false and misleading representations, and violations of consumer protection statutes regarding the security of Plaintiff's and the Class Members' PII and PHI alleged herein occurred in this State. Defendant's principal place of business is also located in this State.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury in this case substantially occurred in this District and Defendant resides in this District.

**PARTIES**

17.    Plaintiff Shykira Scott is and was at all times relevant to this Complaint a citizen of the State of South Carolina. On August 1, 2023, Plaintiff was informed by Defendant that its computer systems had been breached and her PII and PHI may have been accessed by a third party.

18.    Plaintiff suffered actual injury from having her PII and PHI compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of Plaintiff's PII and PHI, a form of property that Reventics obtained from Plaintiff; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

19.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

20.    Defendant Reventics, LLC is a for-profit corporation organized under the laws of the State of Delaware with its principal place of business in Greenwood Village, Colorado.

## FACTUAL ALLEGATIONS

21.    Reventics is a "clinical documentation improvement (CDI) and revenue cycle management (RCM) company" with special focus towards physicians and doing business throughout the United States.[1] Reventics utilizes a "sophisticated engine that consumes huge amounts of data, applies specialty specific clinical and medical billing intelligence, and delivers insights through an elegant, seamless integration with the workflow."[2]

22.    During the regular course of business between Defendant and its customers, medical providers supply Defendant with patient PII and PHI, such as:

    a.    Contact and account information, such as names, usernames, passwords, addresses, telephone numbers, email addresses, and household members;

    b.    Authentication and security information such as government identification, Social Security numbers, security codes, and signatures;

    c.    Demographic information, such as age, gender, and date of birth;

    d.    Payment information, such as credit card, debit card, and/or bank account numbers; and

    e.    Medical history as self-reported by customers, or medical history as transmitted from other healthcare providers.

23.    On August 1, 2023, Plaintiff and other Class Members received a letter stating inter alia the following:

---

[1] https://reventics.com/about (last accessed Aug. 16, 2023)
[2] https://reventics.com/platform (last accessed Aug. 16, 2023)

a. **What happened?** On or about December 15, 2022, Reventics, LLC ("Reventics"), a revenue cycle management company that partners with healthcare providers, detected certain irregularities in its systems, including a cyber-intruder who encrypted and potentially accessed information on Reventics' servers. Reventics immediately engaged an international cybersecurity and forensic consulting firm to investigate and assess the cyber-attack and contain any further threats to Reventics' systems, including any systems containing your information. Certain sensitive information was contained on Reventics' systems. On or about December 27, 2022, it was determined that certain information related to several of Reventics' customers was impacted. On or about March 1, 2023, and on a rolling basis thereafter, Reventics became aware that additional data may have been impacted as part of the December 15, 2022, incident. On June 26, 2023, we provided updated information to your healthcare provider(s) advising that your information was identified in this new data set. In the aftermath of the incident and on an ongoing basis, Reventics' internal teams continue to work diligently with their third-party cybersecurity consultants to further fortify Reventics' systems, including implementing new technical safeguards, revising policies and procedures, and retraining workforce members.

b. **What information was involved?** The information Reventics identified in the impacted systems may have included your first, middle, and last name, and Social Security number, date of birth, address, medical record number, date(s) of service, and health insurance policy number.

c. **What we are doing.** Upon detecting the incident, and to mitigate any potential harm, Reventics immediately took action to secure the affected systems and contain the incident. Reventics then began notifying other stakeholders as information became available. As noted above, we also began working with a leading third-party cybersecurity and forensic consultant to investigate the nature and scope of the incident and secure the data environments, Additionally, Reventics notified relevant regulatory authorities and is notifying those who may have been impacted by this incident.

24.      Defendant offered only minimal assistance to Class Members in the form of one year of identity theft protection services through IDX, a data breach and recovery services company, with up to $1,000,000 of insurance reimbursement.

25.      This attempt to remedy Class Members' harms is inadequate to Plaintiff and other Class Members who are now potentially vulnerable to years of heightened risk from the theft of their PII or PHI and who may have already suffered substantial out-of-pocket costs in responding to the Data Breach.

26.    The unencrypted PII and PHI of Plaintiff and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the PII and PHI of Plaintiff and Class Members.

27.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of PII and PHI for Plaintiff and Class Members.

28.    Because Defendant had a duty to protect Plaintiff's and Class Members' PII and PHI, Defendant should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

29.    Plaintiff relied on the sophistication and security of Reventics and its network to keep her PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff had the understanding that this highly sensitive PII and PHI was confidential and would be properly safeguarded from misuse and theft.

### *The Ransomware Attack and the Data Breach were Foreseeable Risks of which Defendant was on Notice.*

30.    It is well known that PII, including Social Security numbers, is a valuable commodity and a frequent, intentional target of cyber criminals and hackers. Companies that collect such information, including Defendant, are well aware of the risk of being targeted by cybercriminals.

31.    In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks because warnings were readily available and accessible via the internet.

32.    In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108

and the previous record of 1,506 set in 2017.[3]

33.    In light of high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its computer network would be targeted by cybercriminals.

34.    In October 2019, the Federal Bureau of Investigation published an article online titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[4]

35.    In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[5]

36.    In September 2020, the United States Cybersecurity and Infrastructure Security Agency

---

[3] https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed August 16, 2023).

[4] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019) (emphasis added), *available at* https://www.ic3.gov/Media/Y2019/PSA191002 (last visited August 16, 2023).

[5] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), *available at* https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed Aug. 16, 2023).

published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[6]

37.     Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

38.     According to an FBI publication, "Ransomware is a type of malicious software, or malware, that prevents you from accessing your computer files, systems, or networks and demands you pay a ransom for their return. Ransomware attacks can cause costly disruptions to operations and the loss of critical information and data."[7]

39.     Prior to the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII and PHI could be accessed, exfiltrated, and published as the result of a cyberattack.

40.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the Social Security numbers and other sensitive data elements within the PII and PHI to protect against their publication and misuse in the event of a cyberattack.

41.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII and PHI private and secure, Reventics failed to take

---

[6]https://www.cisa.gov/sites/default/files/2023-01/CISA_MS-ISAC_Ransomware%20Guide_S508C.pdf (last visited August 16, 2023).

[7] https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scams-and-crimes/ransomware (last accessed Aug. 16, 2023).

appropriate steps to prevent the PII and PHI of Plaintiffs from being compromised.

*Reventics Had a Duty to Plaintiffs to Properly Secure their PII and PHI.*

42.    At all relevant times, Reventics had a legal and equitable duty to Plaintiff to properly secure her PII and PHI, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff, and to *promptly* notify Plaintiff when Defendant became aware that her PII and PHI were compromised.

43.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Reventics and Plaintiff. The special relationship arose because Plaintiff and Class Members entrusted Reventics with their PII and PHI when they sought healthcare services from their healthcare providers.

44.    Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

45.    Security standards commonly accepted among businesses that store PII and PHI using the internet include, without limitation:

    a.    Maintaining a secure firewall configuration;

    b.    Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

    c.    Monitoring for suspicious or irregular traffic to servers;

    d.    Monitoring for suspicious credentials used to access servers;

    e.    Monitoring for suspicious or irregular activity by known users;

    f.    Monitoring for suspicious or unknown users;

    g.   Monitoring for suspicious or irregular server requests;

    h.   Monitoring for server requests for PII;

    i.   Monitoring for server requests from VPNs; and

    j.   Monitoring for server requests from Tor exit nodes.

46.   To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's help desk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or Zip files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software,

firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[8]

47.    Defendant could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the PII and PHI of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

48.    Reventics' negligence in safeguarding the PII and PHI of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

49.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[9] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[10]

50.    The ramifications of Defendant's failure to keep consumers' PII and PHI secure are long lasting and severe. Once PII or PHI is stolen, particularly Social Security numbers, driver's license numbers, and private medical information, fraudulent use of that information and damage to victims including Plaintiff may continue for years.

---

[8] *See* How to Protect Your Networks from RANSOMWARE, at 3-4, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited August 16, 2023).
[9] 17 C.F.R. § 248.201 (2013).
[10] *Id*.

*The Value of Personal Identifiable Information ("PII").*

51.    The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200.[11]

52.    Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[12]

53.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

54.    Even a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad

---

[11] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at:* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed August 16, 2023).
[12] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed August 16, 2023).

information is quickly inherited into the new Social Security number."[13]

55.    As one would expect, this data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[14]

56.    Among other forms of fraud, identity thieves may use Social Security numbers to obtain driver's licenses, government benefits, medical services, and housing, give false information to police, and obtain tax returns or open fraudulent credit card accounts in Plaintiff's names.

57.    The Private Information compromised in this Data Breach is static and difficult, if not impossible, to change (such as Social Security numbers).

58.    Defendant's credit monitoring offer and advice to Plaintiff places the burden on Plaintiff, rather than the Defendant, to monitor and report suspicious activities to law enforcement. Simply put, Defendant expects Plaintiff to protect herself from *Defendant's* tortious acts resulting in the Data Breach. Rather than automatically enrolling Plaintiff in credit monitoring services upon discovery of the breach, Defendant merely sent instructions to Plaintiff about actions she can affirmatively take to protect herself.

59.    These services are wholly inadequate as they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and they entirely fail to provide any compensation for the unauthorized

---

[13] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited August 16, 2023).
[14] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Aug. 10, 2023).

release and disclosure of Plaintiff's PII.

60.    The injuries to Plaintiff were directly and proximately caused by Reventics' failure to implement or maintain adequate data security measures for the victims of its Data Breach.

### *Reventics Failed to Comply with FTC Guidelines.*

61.    Federal and State governments have established security standards and issued recommendations to mitigate the risk of data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[15]

62.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[16] The guidelines note businesses should protect the personal consumer and consumer information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

63.    The FTC recommends that businesses:

    a.    Identify all connections to the computers where you store sensitive information.

    b.    Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

---

[15] Federal Trade Commission, *Start With Security,* available at: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed August 16, 2023).
[16] Federal Trade Commission, *Protecting Personal Information: A Guide for Business,* available at: https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed August 16, 2023).

c. Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

d. Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e. Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

f. Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g. Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls— settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h. Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i. Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the

transmission should be investigated to make sure it is authorized.

64.    The FTC has brought enforcement actions against businesses for failing to protect consumer and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

65.    Because Plaintiff entrusted Defendant with her PII and PHI, Defendant had, and still has, a duty to the Plaintiff to keep her PII and PHI secure.

66.    Plaintiff reasonably expected that when she provided PII and PHI to Reventics, Reventics would safeguard her PII and PHI.

67.    Reventics was at all times fully aware of its obligation to protect the personal and financial data, including Plaintiff's. Reventics was also aware of the significant repercussions if it failed to do so.

68.    Reventics' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data—including Plaintiffs' first, middle, and last name, addresses, Social Security number, and other highly sensitive and confidential information—constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

### Concrete Injuries are Caused by Reventics' Inadequate Security.

69.    Plaintiff reasonably expected that Reventics would provide adequate security protections for her PII and PHI, and Plaintiff provided Defendant with sensitive personal information, including her name, address, Social Security number, and medical and billing information.

70.    Defendant's poor data security deprived Plaintiff and Class Members of the benefit of

their bargain. Plaintiff and other individuals whose PII and PHI were entrusted with Defendant understood and expected that, as part of that relationship, they would receive data security, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received data security services that were of a lesser value than what they reasonably expected.  As such, Plaintiff and Class Members suffered pecuniary injury.

71.    Cybercriminals intentionally attack and exfiltrate PII to exploit it. Thus, Plaintiff is now, and for the rest of her life will be, at a heightened and substantial risk of identity theft. Plaintiff and Class Members have also incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

72.    The cybercriminals who obtained Plaintiff's and Class Members' PII and PHI may exploit the information they obtained by selling the data in so-called "dark markets" or on the "dark web." Having obtained these names, addresses, Social Security numbers, and other PII, cybercriminals can pair the data with other available information to commit a broad range of fraud in Plaintiff's name, including but not limited to:

      a.  Obtaining employment;

      b.  Obtaining a loan;

      c.  Applying for credit cards or spending money;

      d.  Filing false tax returns;

      e.  Stealing Social Security and other government benefits; and

      f.  Applying for a driver's license, birth certificate, or other public document.

73.    In addition, if an individual's Social Security number is used to create false identification for someone who commits a crime, that individual may become entangled in the criminal justice system, impairing the person's ability to gain employment or obtain a loan.

74.    Accordingly, as a direct and/or proximate result of Reventics' wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.  Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[17] Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Plaintiff's PII will exploit the data at a later date or re-sell it to other possible exploiters.

75.    As a result of the Data Breach, Plaintiff has already suffered injuries, and now faces a substantial and imminent risk of future identity theft.

### Data Breaches Put Consumers at an Increased Risk of Fraud and Identify Theft.

76.    Data Breaches, such as the one Plaintiff and Class Members experienced, are especially problematic because of the disruption they cause to the overall daily lives of victims affected by the attack.

77.    The FTC, like the United States Government Accountability Office, recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[18]

---

[17] Susan Ladika, *Study: Data Breaches Pose A Greater Risk* (July 23, 2014), https://www.foxbusiness.com/features/study-data-breaches-pose-a-greater-risk ((last accessed Aug. 16, 2023).

[18] *See* https://www.identitytheft.gov/Steps (last accessed Aug. 16, 2023).

78.    Theft of Private Information is also gravely serious as Private Information is a valuable property right.[19]

79.    It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs versus when it is discovered, and also between when PII and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which has conducted studies regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[20]

80.    PII and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. Accordingly, because of Reventics' conduct, Plaintiff and Class Members must now worry about identity theft for years on end.

### *Reventics Violated HIPAA's Requirements to Safeguard Data.*

81.    Reventics emphasizes a "customer first" approach, boasting its ability to leverage "strong domain expertise across clinical and financial operations" and its use of "technology and analytics for healthcare data management"[21] However, Reventics fails to attribute the same level of importance to the security of patients' private information.

---

[19] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[20] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last accessed Aug. 10, 2023).

[21] https://reventics.com/about (last accessed Aug. 10, 2023)

82.    Specifically, Reventics' website includes no HIPAA privacy policy, despite the fact that it routinely handles PHI. The Privacy Policy on their website refers almost entirely to users of the website itself, ignoring that the basis of Defendant's business model involves the storing and transmitting of Plaintiff's and other Class Members' PII and PHI.[22]

83.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information. Similar breach notification provisions implemented and enforced by the Federal Trade Commission (FTC), apply to vendors of personal health records and their third-party service providers, pursuant to section 13407 of the HITECH Act.[23]

84.    Reventics had duties to ensure that all information it collected and stored was secure, and that it maintained adequate and commercially reasonable data security practices to ensure the protection of plan members' Personal Information.

85.    Reventics is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

86.    These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

---

[22] https://reventics.com/privacy (last accessed Aug. 16, 2023)
[23] https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (last accessed Aug. 16, 2023)

87.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

88.    HIPAA requires that Reventics implements appropriate safeguards for this information.

89.    HIPAA requires that Reventics provide notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons—i.e., non-encrypted data. Such notice is to be provided without unreasonable delay and in no case later than 60 calendar days after discovery of a breach.

90.    HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. See 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." *See* U.S. Department of Health & Human Services, Security Rule Guidance Material.[24] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says, "represent the industry standard for good business practices with respect to standards for securing e-PHI." *See* U.S. Department of Health & Human Services, Guidance on Risk Analysis.[25]

91.    Should a healthcare entity experience an unauthorized disclosure, it is required to conduct a four-factor Risk Assessment (HIPAA Omnibus Rule: "A covered entity or business associate must

---

[24]  http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html (last accessed Aug. 16, 2023).

[25] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html (last accessed Aug. 16, 2023).

now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported."). The four-factor risk assessment focuses on:

  a. The nature and extent of the PHI involved in the incident (*e.g.,* whether the incident involved sensitive information like Social Security numbers or infectious disease test results);

  b. The recipient of the PHI;

  c. Whether the PHI was actually acquired or viewed; and,

  d. The extent to which the risk that the PHI was compromised has been mitigated following unauthorized disclosure (*e.g.*, whether it was immediately sequestered and destroyed)."[26]

92. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

93. Despite these requirements, Reventics failed to comply with its duties under HIPAA and its own Privacy Practices. Indeed, Defendant failed to:

  a. Maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

  b. Adequately protect Plaintiff's and the Class Members' Personal Information;

  c. Ensure the confidentiality and integrity of electronically protected health information created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

---

[26] 78 Fed. Reg. 5641-46; *see also* 45 C.F.R. § 164.304.

d.    Implement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e.    Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f.    Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g.    Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h.    Take safeguards to ensure that Defendants' business associates adequately protect protected health information;

i.    Conduct the four-factor Risk Analysis following the Data Breach;

j.    Properly send timely notice to Plaintiff and the Classes pursuant to 45 C.F.R.§§ 164.400-414;

k.    Ensure compliance with the electronically protected health information security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

l.    Train all members of its workforce effectively on the policies and procedures with respect to protected health information as necessary and appropriate for the

members of its workforce to carry out its functions and to maintain security of

protected health information, in violation of 45 C.F.R. § 164.530(b).

94.    Accordingly, Reventics failed to comply with its duties under HIPAA and its own

privacy policies despite being aware of the risks associated with unauthorized access of members'

PII and PHI.

## CLASS ACTION ALLEGATIONS

95.    Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure

23 on her own behalf and as the Class Representative on behalf of the following:

> **Nationwide Class:** All persons within the United States whose Personal Identifying
> Information and Private Health Information was stored on Reventics, LLC's servers and
> who were informed via notice of the company's December 15, 2022 Data Breach.

> **South Carolina Subclass:** All persons within South Carolina whose Personal Identifying
> Information and Private Health Information was stored on Reventics, LLC's servers and
> who were informed via notice of the company's December 15, 2022 Data Breach.

96.    The Nationwide Class and South Carolina Subclass shall collectively be referred to

herein as the "Classes."

97.    Plaintiff reserves the right to amend the Class definitions if further investigation and

discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

98.    Excluded from the Classes are governmental entities, Defendant, its officers, directors,

franchise owners, and any entity Defendant retains a controlling interest in; and the affiliates, legal

representatives, and employees of Defendant.

99.    This action has been brought and may be maintained as a class action under Federal

Rule of Civil Procedure 23.

100.    **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). This Class numbers at least in

the thousands of persons. As a result, joinder of all Class Members in a single action is

impracticable. Class Members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

101.    **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual Members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's PII and PHI;

b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.    Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.    Whether Defendant owed a duty to Plaintiff to safeguard her PII and PHI;

f.    Whether Defendant breached its duty to Plaintiff to safeguard her PII and PHI;

g.    Whether computer hackers obtained Plaintiff's PII and PHI in the Data Breach;

h.    Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i.    Whether Plaintiff suffered legally cognizable damages as a result of Defendant's misconduct;

j.      Whether Defendant's conduct was negligent;

k.      Whether Defendant failed to provide notice of the Data Breach in a timely manner; and

l.      Whether Plaintiff is entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

102.    **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of those of the Class because Plaintiff's PII and PHI, like that of every other Class member, were compromised in the Data Breach.

103.    **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class Members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members.

104.    **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Classes that she seeks to represent. The interests of the Members of the Classes will be fairly and adequately protected by Plaintiff and her undersigned counsel.

105.    **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm

described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated Class Members, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

106. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

107. Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

a. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

b. The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
### Negligence
### On Behalf of the Plaintiff and the National Class, or Alternately, on Behalf of Plaintiff and the South Carolina Subclass

108.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-107 of above, as if fully set forth herein.

109.   Reventics collected sensitive PII and PHI from Plaintiff and Class Members by way of their medical service providers.

110.   Reventics owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII and PHI in its possession from being compromised, lost, stolen, accessed, or misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing Reventics' security systems to ensure that Plaintiff's and Class Members' PII and PHI in Reventics' possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

111.   Reventics' duty to use reasonable care arose from several sources, including but not limited to those described herein.

112.   Reventics had common law duties to prevent foreseeable harm to Plaintiff and the Class Members. These duties existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices. Not only was it foreseeable that Plaintiff and Class Members would be harmed by Reventics' failure to protect their PII and PHI, but it was also inevitable, because Reventics knew that hackers routinely attempt to steal such information

and use it for nefarious purposes, so Reventics knew that it was more likely than not that Plaintiff and other Class Members would be harmed if it allowed such a breach.

113.    Reventics' duty to use reasonable security measures also arose as a result of the special relationship that existed between Reventics, on the one hand, and Plaintiff and Class Members, on the other hand. The special relationship arose because Plaintiff and Class Members entrusted Reventics with their personal information and sensitive healthcare information. Reventics alone could have ensured that its security systems and data storage architecture were sufficient to prevent or minimize the Data Breach.

114.    Reventics' duty arises under the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

115.    As mentioned above, these rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider.[27]

116.    HIPAA limits the permissible uses of protected health information and prohibits unauthorized disclosures of this information.

117.    HIPAA requires that Reventics implements appropriate safeguards for this information.

118.    Reventics' duty also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including,

---

[27] *See* 45 C.F.R. § 160.103.

as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect Personal Information by companies such as Reventics. Various FTC publications and data security breach orders further form the basis of Reventics' duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

119.    Reventics has a responsibility to protect consumer data, as it is entrusted with this data, and it did not live up to its responsibility to protect the PII and PHI at issue here.

120.    Reventics knew or should have known that its computing systems and data storage architecture were vulnerable to unauthorized access and targeting by hackers for the purpose of stealing and misusing confidential PII and PHI.

121.    Reventics also had a duty to safeguard the Personal Information of Plaintiff and Class Members and to promptly notify them of a breach because of state laws and statutes that require Reventics to reasonably safeguard sensitive PII and PHI, as detailed herein.

122.    Timely, adequate notification was required, appropriate and necessary so that, among other things, Plaintiff and Class Members could take appropriate measures to freeze or lock their credit profiles, avoid unauthorized charges to their credit or debit card accounts, cancel or change usernames and passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, and take other steps to mitigate or ameliorate the damages caused by Reventics' misconduct.

123.    Reventics breached the duties it owed to Plaintiff and Class Members described above, and thus, Reventics was negligent. Reventics breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the Personal Information of Plaintiff and Class Members; (b) detect the Data

Breach while it was ongoing; (c) maintain security systems consistent with industry standards during the period of the Data Breach; (d) comply with regulations protecting the PII and PHI at issue during the period of the Data Breach; and (e) disclose in a timely and adequate manner that Plaintiff and the Class Members' PII and PHI in Reventics' possession had been or was reasonably believed to have been, stolen or compromised.

124.    But for Reventics' wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII and PHI would not have been compromised.

125.    Reventics' failure to take proper security measures to protect the sensitive PII and PHI of Plaintiff and Class Members created conditions conducive to a foreseeable, intentional act, namely the unauthorized access of Plaintiff's and Class Members' PII and PHI.

126.    Plaintiff and Class Members were foreseeable victims of Reventics' inadequate data security practices, and it was also foreseeable that Reventics' failure to provide timely and adequate notice of the Data Breach would result in injury to Plaintiff and Class Members as described in this Complaint.

127.    As a direct and proximate result of Reventics' negligence, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII and PHI; illegal sale of the compromised PII and PHI on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other

related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII and PHI; lost value of access to their PII and PHI permitted by Reventics; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Reventics' Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages and other economic and non- economic harm.

## COUNT II
### Negligence *Per Se*
### On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the South Carolina Subclass

128.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-107 of above, as if fully set forth herein.

129.    Reventics must comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

130.    These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider.[28]

131.    HIPAA limits the permissible uses of protected health information and prohibits unauthorized disclosures of such information.

---

[28] *See* 45 C.F.R. § 160.103.

132.    HIPAA requires that Reventics implements appropriate safeguards for this information.

133.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, also prohibits "unfair. . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Reventics of failing to use reasonable measures to protect Personal Information.

134.    The FTC publications and orders also form the basis of Reventics' duty.

135.    Reventics violated Section 5 of the FTC Act by failing to use reasonable measures to protect Personal Information and not complying with applicable industry standards. Reventics' conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained, stored, and disseminated, and the foreseeable consequences of a data breach involving a company as large as Reventics, including, specifically the damages that would result to Plaintiff and Class Members.

136.    In addition, under state data security statutes, Reventics had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' PII and PHI.

137.    Reventics' violation of HIPAA and Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

138.    Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

139.    The harm that has occurred is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Classes.

140.    Reventics breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII and PHI.

141.    Plaintiff and Class Members were foreseeable victims of Reventics' violations of the HIPAA, the HITECH Act, the FTC Act, and state data security statutes. Reventics knew or should have known that its failure to implement reasonable measures to protect and secure Plaintiff's and Class Members' PII and PHI would cause damage to Plaintiff and Class Members.

142.    But for Reventics' violation of the applicable laws and regulations, Plaintiff's and Class Members' Personal Information would not have been accessed by unauthorized parties.

143.    As a direct and proximate result of Reventics' negligence *per se*, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII and PHI; illegal sale of the compromised PII and PHI on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII and PHI; lost value of access to their PII and PHI permitted by Reventics; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of

Reventics' Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non- economic harm.

### COUNT III
### Breach of Confidence
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the South Carolina Subclass**

144.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-107 of above, as if fully set forth herein.

145.    Plaintiff and Class Members maintained a confidential relationship with Reventics by way of their healthcare providers, whereby Reventics undertook a duty not to disclose to unauthorized parties the PII and PHI that Plaintiff and Class Members provided to Reventics. Such PII and PHI was confidential, highly personal and sensitive, and not generally known.

146.    Reventics knew Plaintiff's and Class Members' PII and PHI was being disclosed in confidence and understood the confidence was to be maintained, including by expressly and implicitly agreeing to protect the confidentiality and security of the PII and PHI it collected, stored, and maintained.

147.    As a result of the Data Breach, there was an unauthorized disclosure of Plaintiff's and Class Members' PII and PHI in violation of this understanding. The unauthorized disclosure occurred because Reventics failed to implement and maintain reasonable safeguards to protect the PII and PHI in its possession and failed to comply with industry-standard data security practices.

148.    But for Reventics' actions and inactions in violation of the parties' understanding of confidence, the PII and PHI of Plaintiff and Class Members would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Reventics' actions and inaction were the direct and legal cause of the theft of Plaintiff's and Class Members' PII and PHI, as well as the resulting damages.

149.    The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Reventics' unauthorized disclosure of Plaintiff's and Class Members' PII and PHI. Reventics knew its computer systems and technologies for accepting, securing, and storing Plaintiff's and Class Members' PII and PHI had serious security vulnerabilities because Reventics failed to observe even basic information security practices or correct known security vulnerabilities.

150.    As a direct and proximate result of Reventics' breach of confidence, Plaintiff and Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII and PHI; illegal sale of the compromised PII and PHI on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII and PHI; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Reventics' Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

151.    By collecting and storing this PII and PHI and using it for commercial gain, Reventics has a duty of care to use reasonable means to secure and safeguard this PII and PHI to prevent disclosure and guard against theft of the PII and PHI.

## COUNT IV
### Breach of Contract
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the South Carolina Subclass**

152.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-107 of above, as if fully set forth herein.

153.    Plaintiff and Class Members entered into a valid and enforceable contract through which Reventics provided data management services to Plaintiff and Class Members by way of their healthcare providers. That contract included promises by Defendant to secure, safeguard, and not disclose Plaintiff's and Class Members' PII and PHI.

154.    An express contract formed between Reventics and its customers memorialized the rights and obligations of Defendant to its customer's patients and is an agreement between Reventics and individuals who provided their PII and PHI to Reventics, including Plaintiff and Class Members.

155.    As part of its Privacy Policy on its website, Reventics explicitly commits to respecting and protecting the privacy of individuals who use its products.[29]

156.    However, Reventics did not secure, safeguard, and/or keep private Plaintiff's and Class Members' PII and PHI, and therefore Reventics breached its contract with Plaintiff and Class Members.

157.    Reventics allowed third parties to access, copy, and/or transfer Plaintiff's and Class Members' PII and PHI without permission. Therefore, Reventics breached the Privacy Policy with Plaintiff and Class Members.

---

[29] https://reventics.com/privacy (last accessed August 11, 2023).

158.    Reventics' failure to satisfy its confidentiality and privacy obligations resulted in Reventics providing services to Plaintiff and Class Members that were of a diminished value.

159.    As a result, Plaintiff and Class Members have been harmed, damaged, and/or injured as described herein.

160.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Reventics to, inter alia, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT V
### Breach of Implied Contract
### On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the South Carolina Subclass

161.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-107 of above, as if fully set forth herein.

162.    This Count is pleaded in the alternative to Count 4 above.

163.    Reventics provides data management services to Plaintiff and Class Members by way of their healthcare providers. Plaintiff and Class Members formed an implied contract with Reventics regarding the provision of those services through their collective conduct.

164.    Through Reventics' provision of services, it knew or should have known that it must protect Plaintiff's and Class Members' confidential PII and PHI in accordance with Reventics' policies, practices, and applicable law, including the FTC Act and HIPAA.

165.    As part of receiving services, Plaintiff and Class Members turned over valuable PII and PHI to Reventics. Accordingly, Plaintiff and Class Members bargained with Defendant to securely maintain and store their PII and PHI.

166.    Reventics violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' PII and PHI.

167.    Plaintiff and Class Members have been damaged by Reventics' conduct, including by incurring the harms and injuries arising from the Data Breach now and in the future.

**COUNT VI**
**Breach of Fiduciary Duty**
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the South Carolina Subclass**

168.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-107 of above, as if fully set forth herein.

169.    As a condition of obtaining healthcare services from their healthcare providers, Plaintiff and Class Members gave Reventics their PII and PHI in confidence, believing that Reventics would protect that information. Plaintiff and Class Members would not have provided Reventics with this information had they known their information would not be adequately protected.

170.    A fiduciary relationship exists between doctors and their patients to protect patients' privacy and personal information. Similarly, Reventics' acceptance and storage of Plaintiff's and Class Members' PII and PHI created a fiduciary relationship between Reventics and Plaintiff and Class Members to protect that same privacy and personal information. Reventics, therefore, has conferred upon itself a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship.

171.    Reventics breached that duty by failing to properly protect the integrity of the systems containing Plaintiff's and Class Members' PII and PHI, failing to comply with the data security guidelines set forth by HIPAA, the FTC, the HITECH Act, and state regulations, and otherwise

failing to safeguard Plaintiff's and Class Members' PII and PHI that it collected, retained, and stored.

172.    As a direct and proximate result of Reventics' breach of fiduciary duty, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII and PHI; illegal sale of the compromised PII and PHI on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII and PHI; lost value of access to their PII and PHI permitted by Reventics; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Reventics' Data Breach; and lost benefit of their bargains and overcharges for services or products.

## COUNT VII
### Violation of the Colorado Consumer Protection Act
### (Colo. Rev. Stat. § 6-1-101, *et seq.*)
### On Behalf of Plaintiff and Putative Class Members

173.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-107 of above, as if fully set forth herein.

174.    Defendant is a "person" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. § 6-1-101, *et seq*.

175.    Plaintiff and Class Members are "consumers" for purposes of Colo. Rev. Stat. § 6-1-113(1)(a), who were victims affected by the Data Breach when their PII and PHI was unlawfully accessed.

176.    The Colorado CPA prohibits deceptive trade practices in the course of a person's business. Reventics engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Reventics system and data security practices that had the capacity or tendency to deceive medical providers who use Defendant's products; (2) representing that Reventics' systems and data security practices are of a particular standard, quality, and grade even though Reventics knew or should have known that they are not; (3) advertising the Reventics products with the intent to sell and provide them not as advertised; and (4) failing to disclose material information concerning the inadequate data security practices that was known to Reventics at the time of the advertisement or sale with the intent to induce healthcare providers to purchase or use Reventics' products.

177.    In the course of its business, Defendant concealed and suppressed material facts concerning its products' data security and the Data Breach. Defendant misrepresented that Reventics' system could securely maintain PII and PHI provided to it by medical providers and otherwise engaged in activities with a tendency or capacity to deceive. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Defendant's products and services.

178.    Defendant's actions set forth above occurred in the conduct of trade or commerce.

179.    Defendant knew about the inadequate data security practices at the time of sale of its products and services and continued to conceal this knowledge throughout the period of the Data Breach until its disclosure more than two months later on or around March 1, 2023.

180.    Defendant intentionally and knowingly misrepresented material facts regarding the data security practices and Data Breach with the intent to mislead Plaintiff and the Nationwide Class.

181.    Defendant knew or should have known that its conduct violated the Colorado CPA.

182.    Defendant owed Plaintiff and Class Members a duty to disclose the true nature of the inadequate data security practices and the Data Breach because Defendant: (a) possessed exclusive knowledge about the Data Breach; (b) intentionally concealed the foregoing from Plaintiff and Class Members; and (c) made incomplete representations about the Data Breach, while purposefully withholding material facts from Plaintiff and Class Members that contradicted these representations.

183.    Defendant's representations and omissions were material because they were likely to deceive reasonable Class Members.

184.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable Class Members, including Plaintiff, about the true nature of the Data Breach and the value of Reventics' services.

185.    Plaintiff and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Reventics' misrepresentations and its concealment of and failure to disclose material information. Plaintiff and Class Members who were victims of the Data Breach would not have revealed their PII and PHI to their healthcare providers who use Reventics if the true risks of Defendant's products and services had been disclosed. Plaintiff and Class Members

also suffered the loss of their legally protected interest in the confidentiality and privacy of their PII and PHI, nominal damages, and additional losses as described above.

186.    Plaintiff and Class Members risk irreparable injury as a result of Reventics' acts and omissions in violation of the Colorado CPA, and these violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, since victims have no way of knowing which medical providers are subjecting their PII and PHI to Defendant's inadequate data security. Defendant's unlawful acts and practices complained of herein affect the public interest.

187.    As a direct and proximate result of Defendant's violations of the Colorado CPA, Plaintiff and the Class Members have suffered injury-in-fact and/or actual damages.

188.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiff, individually and on behalf of Class Members, seeks monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages.

189.    Plaintiff and Class Members also seek an order enjoining Reventics' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**COUNT VIII**
**Unjust Enrichment, in the Alternative**
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the South Carolina Subclass**

190.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-107 of above, as if fully set forth herein.

191.    Plaintiff and Class Members have an interest, both equitable and legal, in their PII and PHI that was conferred upon, collected by, and maintained by Reventics and that was ultimately stolen in the Reventics Data Breach.

192.    Reventics was benefitted by the conferral upon it of the PII and PHI pertaining to Plaintiff and Class Members and by its ability to retain, use, sell, and profit from that information. Reventics understood that it was in fact so benefited.

193.    Reventics also understood and appreciated that the PII and PHI pertaining to Plaintiff and Class Members was private and confidential and its value depended upon Reventics maintaining the privacy and confidentiality of that PII and PHI.

194.    But for Reventics' willingness and commitment to maintain its privacy and confidentiality, that PII and PHI would not have been transferred to and entrusted with Reventics.

195.    Because of its use of Plaintiff's and Class Members' PII and PHI by way of their healthcare providers, Reventics sold more services and products than it otherwise would have sold. Reventics was unjustly enriched by profiting from the additional services and products it was able to market, sell, and create to the detriment of Plaintiff and Class Members.

196.    Reventics also benefited through its unjust conduct by retaining money that it should have used to provide reasonable and adequate data security to protect Plaintiff's and Class Members' PII and PHI.

197.    Reventics also benefited through its unjust conduct in the form of the profits it gained through the use of Plaintiff's and Class Members' PII and PHI.

198.    It is inequitable for Reventics to retain these benefits.

199.    As a result of Reventics' wrongful conduct as alleged in this Complaint (including, among other things, its failure to employ adequate data security measures, its continued maintenance and use of the PII and PHI belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that PII and PHI),

Reventics has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

200.    Reventics' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' sensitive PII and PHI, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

201.    It is inequitable, unfair, and unjust for Reventics to retain these wrongfully obtained benefits. Reventics' retention of wrongfully obtained monies would violate fundamental principles of justice, equity, and good conscience.

202.    The benefit conferred upon, received, and enjoyed by Reventics was not conferred officiously or gratuitously, and it would be inequitable, unfair, and unjust for Reventics to retain the benefit.

203.    Reventics' defective security and its unfair and deceptive conduct have, among other things, caused Plaintiff and Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their PII and PHI and have caused Plaintiff and Class Members other damages as described herein.

204.    Plaintiff and Class Members have no adequate remedy at law.

205.    Reventics is therefore liable to Plaintiff and Class Members for restitution or disgorgement in the amount of the benefit conferred on Reventics as a result of its wrongful conduct, including specifically: the value to Reventics of the PII and PHI that was stolen in the Data Breach; the profits Reventics received and is receiving from the use of that information; and the amounts that Reventics should have spent to provide reasonable and adequate data security to protect Plaintiff's and Class Members' PII and PHI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in her favor and against Defendant as follows:

A.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and Plaintiff's attorneys as Class Counsel;

B.    For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.    Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class

E.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable monetary relief;

H.    For injunctive relief as pleaded or as the Court may deem proper; and

I.    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees;

J.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: August 17, 2023

Respectfully submitted,

*/s/ Blake G. Abbott*
Blake G. Abbott
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: blake.abbott@poulinwilley.com
      paul.doolittle@poulinwilley.com